Outlook

# EXHIBIT 15

## Re: Clarification and Follow-up Regarding Our Recent Meeting

**From** Fang, Cui <cfang@umes.edu>
**Date** Fri 5/23/2025 11:42 AM
**To** Ginta Martin, Alexandra F <agmartin1@umes.edu>
**Cc** Beale, Camarryn <ctbeale@umes.edu>

Dear Ms. Martin,

Thank you for your detailed response and for the clarifications provided. I am writing to follow up on the proposed interim measures and to provide additional documentation and clarification regarding my concerns, which I hope will be carefully considered in line with UMES policy and OIE's role in protecting faculty rights.

1. Weekly Meetings with Dr. Azemi
When I initially declined the proposed exemption from attending weekly meetings with Dr. Azemi, it was because these were not private one-on-one meetings. They included other instructors (Dr. Zobaed and Dr. Cao) who co-teach CSDP 120. During these meetings, critical instructional expectations were communicated.

For example, Dr. Azemi emphasized that the 10-week online summer version of CSDP 120 must meet the same learning outcomes as the 15-week in-class version. However, important changes affecting the course—such as the introduction of simulation tools, the GMetrix Python certification exam, and new issues with Visual Studio for file operations—were only discussed in these meetings and never communicated in writing. Had I not attended, I would have been unaware of these changes, which would have directly impacted the quality and consistency of my course development.

2. Written Communication with Dr. Azemi
My concern is not with the format of written communication, but with the lack of engagement and transparency from Dr. Azemi. For example:

During my parental leave, he assigned post-leave responsibilities without detailing expectations in writing. My requests for clarification often went unanswered for weeks, or I received vague acknowledgments like "noted."

In Spring 2024, he failed to communicate the removal of all my teaching duties for the following semester. Instead, during a meeting I requested to clarify my spring workload (March 21), he unexpectedly invited Ms. Hairston and announced that my full-time contract might be terminated due to a lack of C++ courses. I was abruptly given three options:

1) Continue in a full-time, staff-like non-teaching role;

2) Move to a part-time adjunct role;
3) Or face non-renewal of my contract.

These discussions lacked prior notice or consultation and significantly contributed to a hostile and unpredictable working environment.

Additionally, this is not the first time I've encountered such treatment:

1) In Fall 2023, Dr. Azemi entered my class without notice and used my slides to teach my CSDP 221 and 222 students without informing me.

2) He has ignored repeated formal requests and follow-ups regarding my desire to participate in advising service, starting in Spring 2024.

3. Evaluation Process and Support Person
I would like to clarify that I did not decline the option to have a support person present during my evaluation meeting. I indicated I needed time to consider it. However, the meeting was subsequently canceled without any explanation or rescheduling notice, and to date, I have received no evaluation, making me the only faculty member in our department excluded from the formal evaluation process.

4. Patterns of Hostility and Retaliation
The cumulative effect of these actions—lack of transparency, ignored communications, last-minute staffing decisions, and canceled evaluations—has created a hostile and isolating environment. The inconsistencies in how I have been treated suggest a pattern of targeted retaliation and abuse of authority.

5. Witnesses
Yes, I would like to formally identify the following witnesses to support my case:

Dr. Stone

Dr. Zhang

Dr. Lizhou Cao

Dr. Zobaed Sm

**Final Statement**

Case 1:25-cv-02768-ABA Document 1-18 Filed 08/22/25 Page 3 of 9

I sincerely urge OIE to take these concerns seriously and evaluate them within the context of the UMES Policy Prohibiting Bullying, which recognizes that intimidation, abuse of authority, and exclusion can constitute harassment and retaliation—even in the absence of physical threats or outbursts.

Thank you for your attention and your continued support in ensuring a fair and equitable workplace for all faculty.

Sincerely,

Cui Fang
Computer Science
Department of Computer Science and Engineering Technology
University of Maryland Eastern Shore
Princess Anne, MD 21853
Rome: EASC 2100
Email: cfang@umes.edu

---

**From:** Ginta Martin, Alexandra F <agmartin1@umes.edu>
**Sent:** Tuesday, May 20, 2025 3:09 PM
**To:** Fang, Cui <cfang@umes.edu>
**Cc:** Beale, Camarryn <ctbeale@umes.edu>
**Subject:** Re: Clarification and Follow-up Regarding Our Recent Meeting

Hello Ms. Fang,

Thank you for your follow-up note.

First, we would like to clarify that there is a distinction between establishing bullying in violation of the policy versus establishing physically threatening and/or intimidating behavior that would warrant removing a Respondent from campus as an interim measure.

Indeed, the UMES Policy Prohibiting Bullying provides that, "discrimination, bullying, and harassment are not limited to acts of physical intimidation, angry outbursts, yelling, or screaming. These behaviors can also include intimidation through manipulation of power, abuse of authority, targeted exclusion, and psychological pressure, all of which can create a hostile work environment." However, intimidating behavior that is not physically threatening would constitute the basis for the determinations that are made at the end of the investigation process. For

example, in your case the determination that a Respondent (Dr. Azemi) created a hostile work environment for you could only be made at the conclusion of the formal investigation process, once all procedural steps have been followed, checked, and any appeals exhausted.

A request for Interim Measures such as the ones you proposed entails an individualized risk assessment, made on a case-by-case basis. It looks different than the analysis to determine that a policy violation has occurred, as explained above. It also has a different purpose, as we explained during our meetings. Based on the information you provided and other reasonably available steps that can be instituted in this case (such as the ones we discussed in our meetings - i.e. not having to attend the weekly meetings with Dr. Azemi in person, written communication with Dr. Azemi, having a support person present during your evaluation meeting - all of which you declined at the time), your requested Interim Measure (administrative leave for Dr. Azemi/removal from campus) is not supported. Please refer to the letter we provided in response to your request on May 9, 2025, which includes the OIE's rationale. We remain available to explore other Interim Measures for you during the investigation process.

Second, we wanted to clarify that you cannot submit a complaint on behalf of other employees; however, you may identify them as witnesses for your case. Would you like to include the two faculty members you mentioned on your list of witnesses?

Lastly, we continue to encourage you to participate in this investigation process by way of in-person meetings, which are crucial for an open dialogue.

Kind regards,

---

**From:** Fang, Cui <cfang@umes.edu>
**Sent:** Monday, May 12, 2025 11:27 AM
**To:** Ginta Martin, Alexandra F <agmartin1@umes.edu>
**Cc:** Beale, Camarryn <ctbeale@umes.edu>
**Subject:** Re: Clarification and Follow-up Regarding Our Recent Meeting

Good morning, Ms. Martin,

Thank you for your response. I understand the recommendation to bring an Advisor or Support Person to future meetings, but I would like to express a practical concern. As a parent of **two young children**, one of whom is still a **newborn**, it is often challenging for me to arrange in-person support for meetings. The presence of my children can also be disruptive to both myself and others, potentially affecting the quality of the discussion. For this reason, I believe that written communication via **email** is a more effective way to prevent misunderstandings, ensure accurate record-keeping, and reduce any misinterpretation of my statements.

Additionally, having a written record of communications ensures that the context and tone of my responses are preserved accurately, reducing the potential for future misunderstandings. Given the sensitive nature of this matter, it is critical for both parties to have a clear, documented account of all communications.

Regarding your comment that I have not provided sufficient evidence of **"physically threatening and/or intimidating"** behavior, I would like to clarify that, according to **UMES OIE's** own policies, **discrimination**, **bullying**, and **harassment** are not limited to acts of physical intimidation, angry outbursts, yelling, or screaming. These behaviors can also include **intimidation through manipulation of power, abuse of authority, targeted exclusion, and psychological pressure**, all of which can create a hostile work environment.

In fact, I have been experiencing significant **psychological distress** as a result of Dr. Azemi's behavior, which has impacted my ability to focus and perform my professional duties effectively. I have already started seeing a **mental health professional** for this reason. The ongoing pressure has made it increasingly difficult for me to maintain my professional standards, often requiring me to spend **significantly more time** to complete routine tasks, further disrupting my work-life balance.

Additionally, I would like to request that **OIE** expand its investigation to include the experiences of other faculty members in the **Department of Computer Science and Engineering Technology**, as there are indications that **Dr. Azemi's** behavior may have affected others. This includes, but may not be limited to:

- **Dr. Weiwei Zhu Stone** (another female teaching faculty member and Chinese faculty) who has directly expressed concerns about Dr. Azemi's behavior,
- **Dr. Jun Zhang** (Chinese faculty) who has similarly raised concerns, and
- **potentially other faculty members** who may have experienced similar treatment but have not yet come forward.

Understanding the full scope of his behavior is critical to assessing the broader impact on the department's work environment, which is one of the reasons I believe his continued presence on campus is inappropriate and potentially harmful, as I stated in my initial request for **Interim Measures**.

Finally, I would like to request clarification on why the OIE's assessment appears to be limited to **physically threatening or intimidating** behaviors, as this seems inconsistent with broader definitions of bullying, discrimination, and harassment in the UMES policy. Could you please provide the specific policy sections that support this interpretation?

I appreciate your continued attention to this matter and look forward to your guidance on the next steps.

Thank you for your time and support.

Sincerely,



Cui Fang
Computer Science
Department of Computer Science and Engineering Technology
University of Maryland Eastern Shore
Princess Anne, MD 21853
Rome: EASC 2100
Email: cfang@umes.edu

---

**From:** Ginta Martin, Alexandra F <agmartin1@umes.edu>
**Sent:** Friday, May 9, 2025 11:43 AM
**To:** Fang, Cui <cfang@umes.edu>
**Cc:** Beale, Camarryn <ctbeale@umes.edu>
**Subject:** Re: Clarification and Follow-up Regarding Our Recent Meeting

Hello Ms. Fang,

Thank you for your note.

My previous email (included in the thread below) was primarily a request related to the supporting documentation you indicated you had in connection with some of your allegations against Dr. Azemi. We acknowledge your impression of the content and tone of our May 1 meeting; however, Camarryn and I's understanding of what was communicated differs. On that note and to enhance communication in the future, we encourage you to strongly consider having an Advisor or Support Person present during any future meetings with our office. That might be helpful with notetaking on your end, for example, and help eliminate any concerns of miscommunication or misinterpretation.

We will provide a separate response to your request for Dr. Azemi to be placed on administrative leave as an Interim Measure. Please note that our assessment of your current request does not reflect on the substance of your allegations. Dr. Azemi's alleged actions that fall under the jurisdiction of our office will be investigated, following the procedures outlined in the applicable policies to determine whether or not they constitute policy violations. The OIE does not make a determination as to whether a policy violation occurred prior to the completion of an investigation process. As a reminder, in the OIE's role as a neutral and impartial entity, we are not advocates for either party, Complainant or Respondent, as noted in the Complainant's Acknowledgement of Information Form.

We remain available for any questions and concerns you may have for the duration of the investigation. Feel free to check in anytime if you would like a status update.

Kind regards,

---

**From:** Fang, Cui <cfang@umes.edu>
**Sent:** Tuesday, May 6, 2025 10:13 AM
**To:** Ginta Martin, Alexandra F <agmartin1@umes.edu>
**Cc:** Beale, Camarryn <ctbeale@umes.edu>
**Subject:** Clarification and Follow-up Regarding Our Recent Meeting

Good morning Ms. Martin,

Thank you for your email. However, I must respectfully clarify that your summary does not accurately reflect the content or tone of our recent meeting. I am unsure whether there was a misunderstanding or a misrepresentation, but I feel compelled to provide a clearer account of what transpired and the concerns I expressed.

During our meeting, I clearly conveyed my deep concern about retaliatory actions by Dr. Azemi following my report to Ms. Hairston. Specifically, I described how he entered my classroom without prior notice, began teaching my students using the lectures I had prepared, and did so without explanation to the class—an act that felt deliberately humiliating and bullying.

Furthermore, Dr. Azemi came to my office without prior appointment and instructed me to study Python with a male graduate student. He continued to enter my office uninvited and repeatedly pressured me to complete all lectures, homework, and quizzes for CSDP 120 by the end of Spring 2024, and for CSDP 150 before Fall 2024, despite these courses not being assigned to me.

As I explained, he also informed me—without any prior communication or formal review—that the department could end my contract. He stated that unless I accepted a reassignment to non-teaching duties or an adjunct teaching role, my employment would be terminated. The stress of this threat caused me to break down in tears and temporarily leave the meeting to collect myself.

I am one of four lecturers in the department. I am the only woman, the youngest, and the only one who has received the "Best Instructor" award. Yet I appear to be singled out for treatment that is exclusionary and harmful, and I expressed to you my concern about the lack of institutional protection. I also explained that my office is isolated and that, based on Dr. Azemi's prior behavior, I felt unsafe and feared further confrontations.

I also informed you that Dr. Azemi contacted me during my approved parental leave and imposed work expectations related to unassigned courses. I was disappointed by the lack of acknowledgment or concern regarding this intrusion.

Regarding interim measures, I requested that Dr. Azemi be placed on administrative leave. You appeared to dismiss this option, stating that it would not provide immediate protection. I would appreciate further clarification, as it is unclear to me why removing

the source of hostility from the workplace would not enhance my safety and reduce my risk of further harm.

Additionally, I did not state that I am unconcerned about attending meetings with Dr. Azemi. On the contrary, I expressed significant apprehension and requested safeguards for any future interactions.

As UMES policy includes administrative leave as a possible remedy, I respectfully ask why this measure has not been considered in my case.

Sincerely,



Cui Fang
Computer Science
Department of Computer Science and Engineering Technology
University of Maryland Eastern Shore
Princess Anne, MD 21853
Rome: EASC 2100
Email: cfang@umes.edu

Hello Dr. Fang,

Thank you for connecting yesterday.

During our meeting, you indicated that you had supporting documentation (emails. notes, etc.) for the following:

1) Your attempts to clarify work expectations with Dr. Azemi and prepare for your return after your parental leave, as well as any other related communications.
2) Your response to Dr. Azemi in connection to his directive to "learn from" the graduate student and any other related communications.

Please also include the name of the graduate student referenced above, any other names of witnesses that may have relevant information related to any of your allegations, and/or any other supplemental documentation you would like reviewed in support of your allegations.

As it relates to Interim Measures, you indicated that you would let us know if you have any specific needs for the duration of the investigation process. You advised that your weekly meetings with Dr. Azemi took place with other faculty members present; therefore, you did not have a concern about attending them. In connection to your evaluation which you approximated would take place in a couple of weeks, you indicated that, at this time, you did not need someone else present, given the location of the evaluation meeting (conference room, glass walls). Please advise if anything changes and you would like to revisit that decision.

We also provided an update on the status of the investigation and revisited procedural aspects of the investigation process, including protections against retaliation and the importance of timely reporting of any future related concerns.