**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CUI FANG, | * |
| *Plaintiff*, | * |
| v. | * |
| | No. 1:25-cv-02768-ABA |
| UNIVERSITY OF MARYLAND, | * |
| EASTERN SHORE, ET AL., | |
| *Defendants*. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

ANTHONY G. BROWN
Attorney General of Maryland

*s/ Michael E. Rowan*
MICHAEL E. ROWAN
Federal Bar No. 27660
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland  21202
mrowan@oag.state.md.us
(410) 576-6476
(410) 576-6437 (facsimile)

October 31, 2025                    *Attorneys for Defendants*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................... 2

ARGUMENT ....................................................................................................... 5

I.      STANDARD OF REVIEW ......................................................................... 5

II.     MS. FANG'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY, STATE
        STATUTORY IMMUNITY, AND QUALIFIED IMMUNITY. ............................... 6

        A.      Because The University and USM Have Eleventh Amendment
                Immunity, This Court Lacks Subject Matter Jurisdiction With Respect
                To Ms. Fang's §1983, §1985, Tort, and Contract Claims............................ 7

        B.      Because The Individual Defendants Have Immunity, This Court
                Lacks Subject Matter Jurisdiction With Respect To Ms. Fang's
                Claims Against Them. ................................................................. 9

        C.      Because The Individual Defendants Have Qualified Immunity, The
                Claims Against Them Should Be Dismissed. ............................. 12

III.    MS. FANG'S DUE PROCESS CLAIMS IN COUNTS I AND III SHOULD BE
        DISMISSED BECAUSE SHE DID NOT HAVE A CONSTITUTIONALLY PROTECTED
        PROPERTY INTEREST IN CONTINUED EMPLOYMENT WITH THE UNIVERSITY. ........ 14

IV.     MS. FANG'S CLAIMS OF RETALIATION UNDER TITLE VI AND TITLE IX IN
        COUNTS II AND IV SHOULD BE DISMISSED BECAUSE SHE FAILS TO STATE A
        CLAIM FOR RETALIATION AND BECAUSE SUCH CLAIMS ARE NOT
        COGNIZABLE AGAINST THE INDIVIDUAL DEFENDANTS. ........................................ 16

        A.      Ms. Fang Has Not Alleged That She Engaged In Protected Activity. ........ 16

        B.      Title VI and Title IX Claims Are Not Cognizable Against The
                Individual Defendants. .................................................................. 18

V.      MS. FANG'S § 1985 CONSPIRACY CLAIM IN COUNT V SHOULD BE DISMISSED
        BECAUSE IT IS DEFICIENT AS A MATTER OF LAW. .................................................. 18

        A.      Ms. Fang Fails To Allege Racial or Other Class-Based Discriminatory
                Animus, Which Is A Necessary Element of A § 1985 Conspiracy. ........... 19

B.   Ms. Fang's Conspiracy Claim is Barred Under the Intracorporate Conspiracy Doctrine. .................................................................................. 20

VI.   Ms. Fang's Tort and Contract Claims in Counts VI Through X Should Be Dismissed For Failure to State a Claim. .................................... 21

A.   Ms. Fang Fails to Sufficiently Plead Breach of Contract. ........................... 21

B.   Ms. Fang Fails to Sufficiently Plead Promissory Estoppel. ........................ 22

C.   Ms. Fang Fails to Sufficiently Plead Negligent Hiring/Supervision. ........... 23

D.   Ms. Fang Fails to Sufficiently Plead Tortious Interference. ....................... 23

E.   Ms. Fang Fails to Sufficiently Plead Defamation. ...................................... 24

CONCLUSION ............................................................................................................ 25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CUI FANG,                                          *

           *Plaintiff*,              *

       v.                              *

                            No. 1:25-cv-02768-ABA

UNIVERSITY OF MARYLAND,                            *
EASTERN SHORE, ET AL.,
                          *

            *Defendants*.

   *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants University of Maryland Eastern Shore, University System of Maryland, Heidi Anderson, Rondall Allen, Asad Azemi, Jason Casares, Alexandra Ginta Martin, Jay A. Perman, and Matthew A. Taylor, by undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by plaintiff, Cui Fang.

**INTRODUCTION**

Plaintiff, Cui Fang, is a former faculty member of the University of Maryland Eastern Shore (the "University"). She brought this employment discrimination action claiming the University retaliated against her in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX") (count two) and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d – 2000d-7 ("Title VI") (count four). Ms. Fang also alleges due process violations (counts one and three), civil conspiracy (count five), breach of contract (count six), promissory estoppel (count seven), negligent hiring and supervision (count eight), tortious interference with contract (count nine), and defamation (count ten). In addition to the University, Ms. Fang names the University System of Maryland ("USM"), Chancellor Jay A. Perman, President Heidi

Anderson, Rondall Allen, Asad Azemi, Jason Casares, Alexandra Ginta Martin, and Matthew A. Taylor as defendants.

While Ms. Fang's pro se complaint is rife with personal grievances and critiques of the University's administration and staff, at bottom, she fails to state legally cognizable claims against any of the defendants. Indeed, even allowing for liberal construction of her claims, Ms. Fang's complaint fails to withstand scrutiny. As demonstrated herein, Ms. Fang's complaint should be dismissed because her claims are barred by the doctrine of sovereign immunity, by state statutory immunity, and by the doctrine of qualified immunity. Ms. Fang's due process claims are also precluded because she did not have a protected property interest in continued employment with the University. Ms. Fang's claims of retaliation under Title IX and Title VI fail as a matter of law because she has not alleged that she engaged in protected activity under those statutes. Ms. Fang's claim of civil conspiracy is deficient because she has not alleged any racial or other class-based discriminatory animus and the claim is otherwise precluded by the intracorporate conspiracy doctrine. Finally, Ms. Fang fails to allege facts sufficient to state plausible tort or contract claims.

## FACTUAL ALLEGATIONS[1]

Beginning in 2021, Ms. Fang was a lecturer in the University's Department of Computer Science and Engineering Technology (the "Department"). ECF No. 1, Compl. ¶ 3. In 2022, Asad Azemi ("Dr. Azemi") was named Chair of the Department. Compl. ¶ 6. Ms. Fang alleges that the University "did not conduct the appropriate background investigations or ignored the red flags" which, in her view, should have precluded Dr. Azemi's appointment. Compl. ¶ 26. Ms. Fang further claims that, upon his appointment as Chair, Dr. Azemi "started a series of problems for

---

[1] For purposes of this motion only, defendants will recite the facts alleged in the complaint as if they were true. Defendants reserve the right to dispute the alleged facts in future pleadings.

faculty members in the Department" and that he had "a preference for hiring Iranians."  Compl. ¶¶25, 27.[2]

Ms. Fang asserts that in fall 2023, Dr. Azemi asked her to upload all her teaching materials for two classes (CSDP 221 and CSDP 222) and then "unilaterally took over her teaching duties." Compl. ¶ 29.  Ms. Fang also claims that Dr. Azemi ordered her "to collaborate with graduate students for an online course design" for her two courses, but that she "was never compensated for this work." Compl. ¶ 30.  Ms. Fang alleges that in the winter of 2024, while serving as a secondary instructor, she "pointed out students without prerequisites" and noted "serious academic integrity issues in how the courses were conducted," but her concerns were dismissed.  Compl. ¶ 31.  In spring 2024, Ms. Fang's section of CSDP 221 was cancelled because of the enrollment of only three students.  Compl. ¶ 34.  Ms. Fang claims that in 2025, other courses with similarly low enrollment were not cancelled.  Compl. ¶ 34.

At the end of 2024, Ms. Fang took pre-approved parental leave for 12 weeks.  Compl. ¶ 54.  Ms. Fang claims that while on leave, Dr. Azemi began reassigning her responsibilities and removed certain teaching duties.  Compl. ¶ 54.  Upon her return from parental leave, Ms. Fang claims that she found that all her fall 2025 teaching assignments had been removed and that she was offered only non-instructional work.  Compl. ¶ 55.  Ms. Fang asserts she met with Dr. Azemi on March 21, 2025 to clarify her spring teaching assignments, but that the meeting "took a confrontational tone and focused on removing her teaching responsibilities."  Compl. ¶ 56.  She

---

[2] Ms. Fang's complaint also includes a litany of workplace grievances concerning Dr. Azemi that have no bearing on any of her claims.  For example, Ms. Fang claims that Dr. Azemi "frequently reviewed lecturers' activities" (Compl. ¶ 35), gave "lenient exam retake options" (Compl. ¶ 36), asked her to sign off on a student's grade change request (Compl. ¶ 51), and otherwise inflated students' grades (Compl. ¶¶ 48, 50, 51).

claims that Dr. Azemi "continued to intimidate and harass her after this meeting" and that Dr. Azemi required her to be in the office for 40 hours per week.  Compl. ¶ 58.

On March 31, 2025 and April 14, 2025, Ms. Fang emailed USM Chancellor Jay Perman and the Board of Regents "to inform them about fraudulent practices and the hostile working environment" in the Department.  Compl. ¶ 59.  On April 14, 2025, Chancellor Perman's assistant responded to Ms. Fang and suggested that she contact the University's Office of Institutional Equity ("OIE") with her concerns.  Compl. ¶ 60.  Ms. Fang states that she expressed apprehension about asserting a claim with OIE because its director, Jason Casares, had a "publicly known reputation for alleged sexual assault" and that OIE had a reputation "for abusing investigation processes" at the University.  Compl. ¶ 61.

On March 25, 2025, Ms. Fang filed a complaint with USM's Fraud Hotline "with information about enrollment, grading, and attendance fraud in specific courses" at the University. Compl. ¶ 63.  Ms. Fang alleges that the Fraud Hotline was "difficult to use and designed to prevent complaints."  Compl. ¶ 64.  Nevertheless, Ms. Fang alleges that Chancellor Perman learned of her complaints and "developed animosity" toward her "because he wanted to conceal and cover up fraud and protect his close associate, [University President] Heidi Anderson."  Compl. ¶ 65.  Ms. Fang further alleges that she was never contacted by USM for more information relating to her complaint.  Compl. ¶ 66.  Ms. Fang also claims that she filed complaints with the U.S. Department of Education and the Department of Justice.  Compl. ¶ 70.

On March 25, 2025, Ms. Fang also filed a complaint with OIE in which she alleged bullying, harassment, and "discriminatory behavior" related to her FMLA leave.  Compl. ¶ 73; Ex. 15.  Ms. Fang claims that, "from the moment of filing, it appeared that OIE staff – Jason Casares and Alexandra Ginta Martin – were hostile and biased toward her because of their friendship with

[Dr.] Azemi." Compl. ¶ 74. It is also alleged that during her initial meeting, Alexandra Ginta Martin asked Ms. Fang "trick questions" to deceive Ms. Fang into providing responses that "were designed to be twisted to help [Dr.] Azemi." Compl. ¶ 75. On August 1, 2025, following an investigation, OIE issued a report and found that Ms. Fang's allegations were not substantiated. Compl. ¶ 81.

On August 8, 2025, Ms. Fang appealed the OIE's findings and claimed that its report was "biased, deceptive, and violative of due process protections." Compl. ¶¶ 83, 84. On August 12, 2025, Alexandra Ginta Martin told Ms. Fang that Dr. Azemi also appealed the OIE's findings and Ms. Fang had five days to respond to that appeal. Compl. ¶ 118. Ms. Fang alleges that she previously had not been informed of any OIE complaints filed by Dr. Azemi. Compl. ¶ 119.

On August 19, 2025, Ms. Fang was notified by President Heidi Anderson that her employment as a lecturer at the University would terminate on November 21, 2025. Compl. ¶ 120; Exhibit 22. Three days after receiving this notification, Ms. Fang filed this action. ECF No. 1.

## ARGUMENT

### I.    STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint." *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 370 (D. Md. 2020) (citation omitted). "[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation and internal quotation marks omitted). In deciding a motion based on Rule 12(b)(1), a court applies "the standard applicable to a motion for

summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991). Thus, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* and *Twombly* decisions "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the well-pled facts are accepted as true, a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012).

## II. Ms. Fang's Claims Are Barred by Sovereign Immunity, State Statutory Immunity, and Qualified Immunity.

Apart from Ms. Fang's claims of retaliation under Title IX (count two) and Title VI (count four), all counts against the University and USM are barred by sovereign immunity.[3] As to the individual defendants, all of Ms. Fang's claims are barred by sovereign immunity, state statutory immunity, and qualified immunity. In view of these immunities, this Court lacks subject matter jurisdiction and the claims should be dismissed.

---

[3] As will be demonstrated below in Section IV, Ms. Fang's Title IX and Title VI retaliation claims against the University and USM are precluded for other reasons.

A.    **Because The University and USM Have Eleventh Amendment Immunity, This Court Lacks Subject Matter Jurisdiction With Respect To Ms. Fang's §1983, §1985, Tort, and Contract Claims**.

Ms. Fang's due process claims under 42 U.S.C. § 1983 (counts one and three), conspiracy claim under 42 U.S.C. § 1985 (count five), and her contract and tort claims (counts six through ten) are precluded by the University's and USM's Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution bars suits in federal court by citizens against un-consenting states and state agencies.[4] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* USM and the University, as a constituent institution of USM, are considered instrumentalities of the State for immunity purposes. Md. Code Ann., Educ. § 12-102(a)(1)-(3) (USM is "an instrumentality of the State" and "an independent unit of State government"); *id.* § 12-101(b)(6)(iii) (the University is a constituent institution of USM).

There are three exceptions to Eleventh Amendment immunity, none of which applies here. First, a state may waive its Eleventh Amendment immunity. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000). Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar private citizens from suing state officials in their official capacity for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. *Halderman*, 465 U.S. at 101.

---

[4] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

The first exception does not apply because Maryland has not waived its Eleventh Amendment immunity to claims under § 1983, § 1985, or for tort or contract claims in federal court. *See, e.g., Harmon v. Maryland Dept. of Health & Mental Hygiene*, No. ELH-13-605, 2013 WL 867992, *3 (D. Md. March 3, 2013) ("While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State Gov't, § 12-101, *et seq.*, it has not waived its immunity under the Eleventh Amendment to suit in federal court.") (quoting *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004)); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 397-98 (4th Cir. 1990) (recognizing that Maryland has not waived Eleventh Amendment immunity from tort claims in federal court).

The second exception does not apply because in enacting 42 U.S.C. §§ 1983 and 1985, Congress did not abrogate the States' Eleventh Amendment immunity. *See Pennhurst*, 465 U.S. 89 at 120 ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claims."); *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 66 (1989) (holding that while "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, [] it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979) (holding that § 1983 was not intended to abrogate states' sovereign immunity); *Rucker v. Higher Educ. Aid Bd.*, 669 F.2d 1179, 1184 (7th Cir.1982) (no abrogation for § 1985 claims). Additionally, because Ms. Fang's tort and contract claims involve state law only, abrogation by Congress is not an issue. Finally, the *Ex parte Young* exception does not apply to state entities such as the University and USM but rather state officials only. *See Lee-Thomas v. Prince George's Cty. Public Schools*, 666 F.3d 244, 249 (4th Cir.

2012) (recognizing that the lawsuit seeking injunctive relief must name a state official as the defendant, not state agency).

In addition, the State of Maryland has enacted a limited waiver of its sovereign immunity for tort and contract actions brought against the State and its agencies. State Gov't § 12-104, § 12-201. This waiver, however, applies only "in a court of the State." *Id*. § 12-104(a)(1), §12-201(a); *see Weller v. Department of Soc. Servs.*, 901 F.2d 387, 397-98 (4th Cir. 1990) ("The waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.")  Because Ms. Fang filed her action in federal court, Maryland's limited waiver for tort and contract claims is therefore inapplicable.

Thus, Ms. Fang's retaliation and conspiracy claims against the University and USM under 42 U.S.C. §§ 1983 and 1985 in counts one, three, and five and her contract and tort claims in counts six through ten are barred by Eleventh Amendment and State Sovereign immunity and should be dismissed for lack of subject matter jurisdiction.

> **B.      Because The Individual Defendants Have Immunity, This Court Lacks Subject Matter Jurisdiction With Respect To Ms. Fang's Claims Against Them.**

The individually named defendants share in the University's and USM's immunity from being sued in federal court because a "suit against the state officials acting in their official capacities is a suit against the State." *Weller v. Dep't of Soc. Serv's for City of Balt*., 901 F.2d 387, 398 (4th Cir. 1990) (citation omitted).  As such, Ms. Fang's claims against these employee defendants are barred by the Eleventh Amendment.[5]

---

[5] Ms. Fang's retaliation claims under Title IX (count two) and Title VI (count four) and her claims for breach of contract (count six) and promissory estoppel (count seven) are directed against USM and the University only, not the individually named defendants.

Moreover, Ms. Fang's tort claims against the individual defendants, all of whom are State employees, are also precluded by State statutory immunity. Md. Code Ann., State Gov't, § 12-105 ("State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article."); Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (state employees "are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence"); *see Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 763 (D. Md. 2015) (finding University employees personally immune from negligence suits under § 5-522(b)). Therefore, the individual defendants are entitled to statutory immunity so long as they were acting within the scope of their employment and did not act with malice or gross negligence.

Ms. Fang presents no factual allegations showing that the individual defendants acted with gross negligence or malice, or that any of their alleged actions were conducted outside the scope of their employment with the University or USM. To the contrary, the factual allegations in the complaint are tied to the individual defendants' status as University or USM employees. Compl. ¶¶ 4-9. Thus, because Ms. Fang's tort allegations against the individual defendants fall squarely within the ambit of state personnel tort immunity, this Court lacks subject matter jurisdiction and should dismiss the tort claims asserted in counts eight through ten against the individual defendants.

Additionally, Ms. Fang cannot rely on the *Ex parte Young* exception to sustain her claims against the individually named defendants. The *Ex parte Young* exception is viewed as a "narrow one" and is only applicable where a party seeks prospective relief. *See MedSense, LLC v. University Sys. of Md.,* 420 F. Supp. 3d 382, 391 n.4 (D. Md. 2019). Thus, the exception does not apply to Ms. Fang's claims against the individually named defendants in their official capacities

for damages.  Moreover, the *Ex parte Young* exception does not apply where the alleged violation of federal law occurred entirely in the past.  *See Adler v. Virginia Commonwealth Univ.*, 259 F. Supp. 3d 395, 408 (E.D. Va. 2017) (citing *DeBauche v.* Trani, 191 F.3d 499, 505 (4th Cir. 1999)). The *Ex parte Young* exception also does not apply to Ms. Fang's tort claims because such claims are not designed to remedy ongoing violations of federal law.

While claims for prospective injunctive relief in the form of reinstatement to a previous job may fall within the *Ex parte Young* exception, *see, e.g., Biggs v. North Carolina Dept. of Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020), most of the individuals named by Ms. Fang in their "official capacities" lack authority to provide the requested injunctive relief.  With the exception of University President Heidi Anderson, none of the individually named defendants has the authority to reinstate Ms. Fang's employment with the University.[6]  *See Stewart v. Nottoway Cnty.*, 684 F. Supp. 3d 467, 480 (E.D. Va. 2023) (holding that *Ex parte Young* exception does not apply to defendants who lack the authority to reinstate the plaintiff.)  Indeed, Rondall Allen is the University's provost (Compl. ¶ 5), Asad Azemi is the chair of the Department (Compl. ¶ 6), Jason Casares is the head of OIE (Compl. ¶ 7), Alexandra Ginta Martin is the Assistant Director of OIE (Compl. ¶ 8), and Jay Perman in the Chancellor of the USM (Compl. ¶ 9).[7]  There are no allegations in the complaint to suggest that any of these individuals have the unilateral authority to grant the injunctive relief sought by Ms. Fang, namely reinstatement of her position at the University.  Thus, the *Ex parte Young* exception does not apply and Ms. Fang's claims against the individual defendants should be dismissed.

---

[6] As will be discussed, the claims against President Anderson are subject to dismissal for other reasons, including failure to state a claim.

[7] Defendant Matthew Taylor is general counsel for UMES.  Although Mr. Taylor is identified in the caption of the complaint, he is not identified in the "Parties" section.

C.      **Because The Individual Defendants Have Qualified Immunity, The Claims Against Them Should Be Dismissed.**

This Court should also dismiss plaintiff's personal capacity claims against the individual defendants because they are entitled to qualified immunity. Under the qualified immunity doctrine, public employees may be sued personally for their official conduct only if their acts can be said to violate "clearly established" legal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A qualified immunity analysis consists of two questions that can be taken in any order: (1) do the facts alleged show a violation of a constitutional right; and (2) if so, was that right "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 236.

An individual is entitled to qualified immunity where "clearly established law" does not show that the alleged conduct violated the constitution. *Id.* at 2443-44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (citation omitted). Qualified immunity shields "bad guesses in gray areas" and permits liability only "for transgressing bright lines." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (citations and internal quotation marks omitted).

As demonstrated in Section III below, Ms. Fang's allegations falter at the first step of the analysis because her allegations do not support a finding that any defendant engaged in conduct that violated a constitutional right. While the Court may stop after the first step, *see Pearson*, 555 U.S. at 236, Ms. Fang's claims against the individual defendants also fail at the second step. In conducting the "clearly established" analysis, courts in the Fourth Circuit look to the decisions of

the U.S. Supreme Court, the Court of Appeals for the Fourth Circuit, and the Supreme Court of Maryland, and "ordinarily need not look any further than decisions from these courts." *Booker v. S.C. Dep't of Corr.,* 855 F. 3d 533, 538-89 (4th Cir. 2017). To determine whether a right is clearly established, it is not required that a case be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Clearly established rights should not be defined "at a high level of generality," but "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

The individual defendants' conduct here, as alleged by Ms. Fang, violated no clearly established law. In fact, as will be demonstrated in Section III, because Ms. Fang was not a tenured faculty member, she had no constitutionally protected property interest in continued employment at the University. *See Davis v. Rao*, 982 F.Supp. 2d 683, 691 (E.D. Va. 2013) (finding that the plaintiff had no protectable property interest in her status as an untenured professor). Furthermore, as the Supreme Court has stated, "When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." See *Regents of Univ. of Mich. V. Ewing*, 474 U.S. 214, 225 (1985); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that the protection of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law.") The Fourth Circuit has cautioned that courts in general "should be loathe to interfere with the organization and operation of an institution of higher education." *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F. 3d 620, 629 *4th Cir. 2002); accord *Harwood v. Johns Hopkins Univ.*, 130

13

Md. App. 476, 483-84 (2000) (holding "courts will not generally interfere in the operations of colleges and universities.")

Ms. Fang's allegations do not sufficiently plead a violation of any clearly established constitutional law by the individual defendants, let alone any violation of any clearly established law of which the individual defendants should have been aware. *See Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002) (concluding that law regarding retaliatory employment decisions not clearly established); *Franklin v. Clark*, 454 F. Supp. 2d 356, 362 (D. Md. 2006) (concluding that due process law in the context of the termination of officer not clearly established). Accordingly, the individually named defendants (Rondall Allen, Heidi Anderson, Jason Casares, Asad Azemi, Alexandra Ginta Martin, Matthew Taylor, and Jay Perman) are entitled to qualified immunity and Ms. Fang's claims against them should be dismissed with prejudice. *See McWaters v. Rick*, 54 Fed. App'x, 379, 384 (4th Cir. 2002) (defendants entitled to qualified immunity and dismissal of action because plaintiff failed to show that the constitutional rights were clearly established).

### III. MS. FANG'S DUE PROCESS CLAIMS IN COUNTS I AND III SHOULD BE DISMISSED BECAUSE SHE DID NOT HAVE A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN CONTINUED EMPLOYMENT WITH THE UNIVERSITY.

In counts one and three, Ms. Fang alleges, via 42 U.S.C. § 1983, that the defendants violated her Fourteenth Amendment due process rights.[8]  In addition to the fact that these claims are barred by immunity, they also fail because Ms. Fang cannot demonstrate that she had a property interest in continued employment beyond the expiration of her employment contract.

To allege a procedural due process claim, a plaintiff must show (1) that she had a property or liberty interest, (2) of which a state actor deprived her, (3) without due process of law. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).  "Property interests, of course,

---

[8] The due process claims in counts one and three are seemingly redundant.

are not created by the Constitution." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* To have a property interest in a benefit, a person must have a "legitimate claim of entitlement to it." *Id.* A mere "abstract need or desire for it" or "a unilateral expectation of it" is insufficient. *Id.*

Ms. Fang, who was lecturer at the University, claims that she had a "constitutionally protected property interest in being able to rely upon [the University's] policies and procedures" (Compl. ¶ 127), and a "constitutionally protected property right in her job" (Compl. p. 26 ¶ 114).[9] Although Ms. Fang was not tenured (Compl. ¶ 3), she alleges that she had a constitutionally protected property interest in the "rules governing the removal of tenured academic staff." Compl. p. 26 ¶ 114. As an untenured lecturer, however, Ms. Fang had no constitutionally protected interest in continued employment beyond the expiration of her employment contract. *See Amr v. Va. State Univ.*, 3:07–CV–628, 2009 WL 112829, at *8 n. 15 (E.D. Va. Jan. 14, 2009), *aff'd,* 331 Fed.Appx. 194 (4th Cir. 2009) ("[A]n untenured professor such as Dr. Amr has no constitutionally protected property interest in continued employment."); *Davis v. Rao*, 982 F.Supp. 2d 683, 691 (E.D. Va. 2013) (finding that the plaintiff had no protectable property interest in her status as an untenured professor); *Marriott v. Cole*, 115 Md. App. 493, 509 (1997) (untenured professor had no protected property interest in the expectation of continued employment beyond the expiration of his employment contact). Similarly, Ms. Fang had no constitutionally protected property interest in her reliance upon the policies and procedures of the University. *See Reid v. James Madison Univ.*, No. 5:21-CV-00032, 2024 WL 3656775, at *9 (W.D. Va. Aug. 5, 2024) (holding that policies and

---

[9] After count two, the paragraph numeration in the complaint is not sequential. To avoid confusion, when referring to paragraphs after count two, defendants will also reference the page number.

procedures of a university are "not a property interest in and of themselves.")  Because Ms. Fang has failed to allege a constitutionally protected property interest that was purportedly violated by defendants, her due process claims asserted in counts one and three should be dismissed.

**IV.    MS. FANG'S CLAIMS OF RETALIATION UNDER TITLE VI AND TITLE IX IN COUNTS II AND IV SHOULD BE DISMISSED BECAUSE SHE FAILS TO STATE A CLAIM FOR RETALIATION AND BECAUSE SUCH CLAIMS ARE NOT COGNIZABLE AGAINST THE INDIVIDUAL DEFENDANTS.**

In count two, Ms. Fang alleges retaliatory termination in violation of Title IX.[10]  In count four, Ms. Fang alleges retaliation in violation of Title VI.  Both claims fail as a matter of law, however, because there are no allegations that Ms. Fang engaged in protected activity under either Title IX or Title VI.  Moreover, to the extent Ms. Fang intended to assert such claims against the individual defendants, her claims are not cognizable.

**A.    Ms. Fang Has Not Alleged That She Engaged In Protected Activity.**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d.  Title IX provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  To successfully plead retaliation under either Title VI or Title IX, a plaintiff must allege, *inter alia*, that she engaged in protected activity.  *Bowman v. Baltimore*

---

[10] The nature of the allegations in count four is unclear.  The allegations suggest that Ms. Fang intended to assert a Title VI retaliation claim.  For example, in count four Ms. Fang alleges that she was unlawfully terminated for "participating in protected activity" (Compl. ¶ 121) and that the defendants "wanted to punish [Ms. Fang] for exposing discrimination and fraud" (Compl. ¶ 122).

*City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 247 (D. Md. 2016) (specifying elements for retaliation under Title IV); *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 584 (D. Md. 2021) (specifying elements for retaliation under Title IX). The inquiry concerning "protected activity" involves whether the employee subjectively believed that the employer had engaged in a practice violative of Title VI or Title IX and whether this belief was objectively reasonable in light of the facts. *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003) (discussing protected activity under Title VI); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (discussing protected activity under Title IX). In other words, to constitute protected activity under both Title VI and Title IX, Ms. Fang must have reported or complained about discrimination on the basis of race, color, national origin, or sex.

But Ms. Fang makes no allegation that she engaged in any Title VI or Title IX-protected activity. While Ms. Fang made complaints about what she viewed as "enrollment, grading, and attendance fraud in specific courses" (Compl. ¶ 63), "discriminatory behavior" unrelated to her sex or race but rather her FMLA from the University in the spring of 2025 (Compl. ¶ 73; Ex. 13), and a purported "hostile work environment" (Compl. ¶ 59), such complaints do not fall within the ambit of Title VI or Title IX. There is no allegation that Ms. Fang ever complained of discrimination proscribed by Title VI, namely discrimination based on race, color, or national origin. 42 U.S.C. § 2000d. Similarly, there is no allegation that Ms. Fang complained of any discrimination prohibited by Title IX, namely sex discrimination. 20 U.S.C. § 1681(a). Without allegations that she engaged in protected activity under Title VI or Title IX, Ms. Fang has not sufficiently pled her claims for retaliation. Counts two and four must therefore be dismissed.

**B.    Title VI and Title IX Claims Are Not Cognizable Against The Individual Defendants.**

Ms. Fang's Title VI and Title IX claims against the individual defendants (Rondall Allen, Heidi Anderson, Asad Azemi, Jason Casares, Alexandra Ginta Martin, Matthew Taylor and Jay Perman) must be dismissed for an additional reason: there is no individual liability under Title VI or Title IX.  *See Bishop v. Lewis*, No. WMN-10-3640, 2011 WL 1704755 at *3 (D. Md. May 4, 2011) (dismissing a Title VI claim against an individual because "Title VI liability is premised on the receipt of federal funds," and any such funds "would be received by a governmental agency and not by an individual"); *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 659-60 (D. Md. 2021) (dismissing Title IX claim against individual defendants because they were not recipients of federal funds).  Thus, Ms. Fang's Title VI and Title IX claims against the individual defendants should be dismissed because such claims are not cognizable.

**V.    MS. FANG'S § 1985 CONSPIRACY CLAIM IN COUNT V SHOULD BE DISMISSED BECAUSE IT IS DEFICIENT AS A MATTER OF LAW.**

In count five, Ms. Fang seeks to hold the defendants liable for alleged participation in a civil conspiracy to violate the United States Constitution under 42 U.S.C. § 1985.[11]  This Court should dismiss count five for two reasons: (1) Ms. Fang has not pled facts to support the elements of a conspiracy; and (2) the intracorporate conspiracy doctrine precludes a cause of action under 42 U.S.C. § 1985 against the defendants.

---

[11]  Although Ms. Fang does not specify which subsection of §1985 she is proceeding under, she presumably brings this claim under subsection (3), which principally concerns conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal protection and immunities under the laws."  *See* 42 U.S.C. § 1985(3).

**A.    Ms. Fang Fails To Allege Racial or Other Class-Based Discriminatory Animus, Which Is A Necessary Element of A § 1985 Conspiracy.**

To state a § 1985 conspiracy claim, a plaintiff "must show an agreement or 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Strickland v. United States*, 32 F. 4th 311, 361-62 (4th Cir. 2022) (quoting *Simmons v. Poe*, 47 F. 3d 1370, 1376-77 (4th Cir. 1995)). This is a "relatively stringent" standard, and the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy…." *Id.* Importantly, to state a viable § 1985 claim, Ms. Fang must allege she was the victim of a conspiracy motivated by a specific class-based, "invidiously discriminatory animus." *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 835 (1983). But Ms. Fang has not pled any racial or other class-based invidiously discriminatory animus on the part of the defendants. Instead, Ms. Fang reasserts her belief that her employment contract was terminated in retaliation for her purported participation in "protected legal activity." Compl. p. 28 ¶ 127; *see also* Compl. p. 29 ¶ 130 (alleging that the individual defendants "engaged in fraud and retaliated against [Ms. Fang] because she reported their fraud.")

While Ms. Fang baldly alleges that Dr. Azemi "expressed a preference for hiring Iranians," (Compl. at ¶ 27), she does not allege any facts regarding discriminatory animus on the part of Dr. Azemi, much less any of the other defendants. Moreover, Ms. Fang fails to plead that there was ever a "meeting of the minds" or a "joint plan of action" to discriminate against plaintiff based on her race. *Simmons*, 47 F.3d at 1377-78. Ms. Fang's bald allegations of conspiracy, without more, fail to state a claim, and count five should therefore be dismissed. *See Harris v. City of Virginia Beach*, 11 Fed. Appx. 212, 215 (4th Cir. 2001) (district court correctly ruled that a plaintiff alleging unlawful intent in conspiracy claims under § 1985(3) must plead specific facts in a nonconclusory fashion to survive a motion to dismiss); *see also Langworthy v. Dean*, 37 F. Supp. 2d 417, 424-25

(D. Md. 1999) (holding that a viable § 1985 claim must allege "facts with particularity which indicate intentional discrimination on the basis of racial animus or any other class-based discriminatory animus on the parts of the Defendants.")

    **B.**    **Ms. Fang's Conspiracy Claim is Barred Under the Intracorporate Conspiracy Doctrine.**

In the alternative, Ms. Fang's conspiracy claim under § 1985 is barred under the intracorporate conspiracy doctrine. Under this doctrine, agents from a single legal entity are "legally incapable of conspiring, which requires multiple people acting together." *Williams v. Mayor, Baltimore City*, No. WMN-14-1125, 2014 WL 5707563, *6-7 (D. Md. Nov. 4, 2014) (quoting *Lewin v. Cooke,* 28 Fed. Appx. 186, 195 (4th Cir. 2002)). The doctrine is based on two principles: a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985).

Ms. Fang thus cannot sue the University and USM and their agents alleging that they conspired with one another, inasmuch as they are considered the same entity. Md. Code Ann., Educ. § 12-101(b)(6)(iii) (the University is a constituent institution of USM); *see also Locus v. Fayetteville State Univ.*, 870 F. 2d 655, 1989 WL 21442 (4th Cir. 1989) (applying intracorporate conspiracy doctrine to bar civil conspiracy claim against university and its employees). Indeed, the Fourth Circuit has routinely affirmed the dismissal of a conspiracy claim against defendants who were alleged to be employees of the same entity. *See, e.g. Painter's Mill Grille v. Brown,* 716 F. 3d 342 (4th Cir. 2013) (affirming dismissal of conspiracy claims brought against landlord and landlord's agents because "a corporation cannot conspire with its agents because the agents' acts are the corporation's own."); *Lifmann v. Carlson Cos., Inc*., 867 F. 2d 609, 1989 WL 5440, at **3-4 (4th Cir. 1989) (affirming dismissal of civil conspiracy claim on grounds that employees of

a parent corporation and employees of a wholly owned subsidiary are legally incapable as a matter

of law of forming a conspiracy); *Zombro v. Baltimore City Police Dept.*, 868 F. 2d 1364, 1371

(4th Cir. 1989) (observing that the Baltimore City Police Department, even if it were a person,

"may not conspire with itself.")  Because the University and USM cannot conspire together with

their own employees to violate Ms. Fang's rights, count five must be dismissed.

## VI.     MS. FANG'S TORT AND CONTRACT CLAIMS IN COUNTS VI THROUGH X SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In addition to this Court's lack of subject matter jurisdiction with respect to Ms. Fang's tort

and contract claims, as discussed in Section II, the claims are also subject to dismissal because Ms.

Fang has not plausibly pled the elements of these claims.  Even liberally construing her complaint,

Ms. Fang does not sufficiently plead any tort or contact claims.

### A.     Ms. Fang Fails to Sufficiently Plead Breach of Contract.

In count six, Ms. Fang alleges that she had a contract with the University for "continuing,

indefinite employment."  Compl. p. 30 ¶ 138.  This allegation, which is the basis for her breach of

contract claim, is squarely at odds with the terms of her employment contract and the exhibits

included with the complaint.  Indeed, in Exhibit 14 to the complaint, Ms. Fang acknowledges that

she had a nine-month contract with the University.  The term nature of Ms. Fang's contract is

consistent with the USM policy concerning faculty appointments, which states that lecturer

positions "are not intended to be considered for professorial appointment" and "shall be for terms

not to exceed three years."[12]  Aside from the factually flawed basis for her breach of contract claim,

---

[12] The USM Policy on Appointment, Rank and Tenure of Faculty can be found at https://www.usmd.edu/regents/bylaws/SectionII/II100.pdf (last visited Oct. 30, 2025).  On a motion to dismiss, courts may consider "matters of which a court can take judicial notice, such as matters of public record and other information that, under Federal Rule of Evidence 201, constitute adjudicative facts." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023).  This includes information contained on a government website. *U.S. v. Garcia*, 855 F.3d 615, 621

Ms. Fang has not identified any terms of her employment contract that were materially breached *See RRC Northeast., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010) (to state a claim for breach of contract, a plaintiff must allege "the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant.")  Thus, Ms. Fang has failed to plausibly plead her claim for breach of contract.

### B.    Ms. Fang Fails to Sufficiently Plead Promissory Estoppel.

In count seven, Ms. Fang asserts a claim of promissory estoppel.  While this claim is barred by immunity, as demonstrated above, the complaint also fails to allege facts to support a promissory estoppel claim.  The elements of promissory estoppel in Maryland are: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promise; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.  *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 343 (D. Md. 2012). While Ms. Fang asserts her promissory estoppel claim against the "defendants" generally, the complaint provides no allegations that any of the four elements are satisfied with respect to any particular defendant.  Such generalized allegations are insufficient to state a claim. *See Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 626 (W.D. Va. 2015) ("In the Fourth Circuit and elsewhere, courts have interpreted *Twombly* and *Iqbal* to mean that generic or general allegations about the conduct of 'defendants,' without more, fail to state a claim.")

---

(4th Cir. 2017) (holding that courts "routinely take judicial notice of information contained on the state and federal government websites.") The Court may therefore take judicial notice of the USM Policy, which is a matter of public record that is available on USM's website.

### C.    Ms. Fang Fails to Sufficiently Plead Negligent Hiring/Supervision.

Count eight, which is particularly difficult to discern, appears to allege that USM and the University negligently hired the individual defendants and that USM Chancellor Jay Perman recklessly failed to supervise the individual defendants and the University.[13]  Compl. p. 32 ¶¶ 143, 145.  To plead a claim for negligent hiring, training, or supervision, Ms. Fang must allege: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, training, or supervising the employee as the approximate cause of plaintiff's injuries.  *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022).

As to USM and Chancellor Perman, this claim fails because neither was the direct employer of the individual defendants.  As to the University's purported negligence in hiring the individual defendants, in addition to its Eleventh Amendment immunity, the complaint simply fails to allege facts to show the "incompetence" of any individual defendants or any facts suggesting a causal link to Ms. Fang's purported injuries.  Ms. Fang's conclusory and speculative allegations simply are insufficient to support a plausible claim for negligent hiring or supervision.

### D.    Ms. Fang Fails to Sufficiently Plead Tortious Interference.

In count nine, Ms. Fang asserts a claim of tortious interference with contract against the individual defendants.  The elements of tortious interference with contract under Maryland law are: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of

---

[13] The difficulty discerning Ms. Fang's allegations is compounded by the fact that she refers to the defendants by numbers 1 to 9, rather than by name, and does so inconsistently.  For example, in paragraph 10, Ms. Fang defines "defendant 7" as the University, but in paragraph 24 defines "defendant 7" and Matthew Taylor.

that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff. *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 426 (D. Md. 2006). Here, in addition to the fact that the allegations concerning tortious interference are conclusory, directed only generally against the "individual defendants," and otherwise lack any degree of specificity, Ms. Fang's contract was with the University, not a third party. Compl. p. 30 ¶ 138. The individual defendants were employees of the University and, under Maryland law, cannot be liable for tortious interference. *See Bleich v. Florence Crittenton Servs. of Baltimore, Inc.*, 98 Md. App. 123, 147 (1993) (holding that an employee acting within the scope of his employment, cannot be held liable for interfering with the contract between the employer and another employee); *see also Borowski v. Vitro Corp.*, 634 F.Supp. 252, 258 (D.Md. 1986), *reversed on other grounds*, 829 F.2d 1119 (4th Cir. 1987). Because there are no allegations that Ms. Fang contracted with a "third party" or that any of the individual defendants were acting outside the scope of their employment, Ms. Fang fails to state a claim for tortious interference.

### E.    Ms. Fang Fails to Sufficiently Plead Defamation.

In count ten, Ms. Fang alleges defamation against all defendants. To state a claim for defamation under Maryland law, a plaintiff must sufficiently allege: (1) that the defendant made a defamatory statement to a third person; (2) that the statement was false; (3) that the defendant was legally at fault in making the statement; and (4) that the plaintiff thereby suffered harm. *Gohari v. Darvish*, 363 Md. 42, 54 (2001). As with her other tort claims, Ms. Fang's defamation claim is deficient in that it is only vaguely directed against the "defendants." There are no allegations concerning who purportedly made any false statements about Ms. Fang or to whom such statements were made. Ms. Fang's generalized allegations fall far short of stating a claim of

defamation that is plausible on its face. This failure to specifically plead facts warrants dismissal of the defamation claim. *See Marcantonio*, 155 F. Supp. 3d at 626.

The defendants are also entitled to a qualified privilege with respect to Ms. Fang's defamation claim. "For reasons of public policy, the law of defamation recognizes certain communications as privileged, and thereby affords those who publish such communications immunity from liability." *Miner v. Novotny*, 304 Md. 164, 167 (1985). "[C]ommunications arising out of the employer-employee relationship clearly enjoy a qualified privilege." *McDermott v. Hughley*, 317 Md. 12, 28 (1989). Because any purportedly defamatory statements by the defendants involved Ms. Fang's job performance (Compl. p. 33 ¶ 153), and therefore fall within the ambit of this privilege, the defendants are shielded from liability for defamation.

## CONCLUSION

The motion to dismiss should be granted.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

*s/ Michael E. Rowan*
MICHAEL E. ROWAN
Federal Bar No. 27660
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland  21202
mrowan@oag.state.md.us
(410) 576-6476
(410) 576-6437 (facsimile)
*Attorneys for Defendants*

October 31, 2025

25

## CERTIFICATE OF SERVICE

I certify that, on this 31st day of October, 2025 the foregoing was served by CM/ECF on all registered CM/ECF users, including:

Cui Fang
1204 Emerson Ave.
Salisbury, Maryland 21801
catherinefangcui@gmail.com

s/ Michael E. Rowan
MICHAEL E. ROWAN